1. TRUST—EVIDENCE—SAVINGS BANK DEPOSIT.
    Where a person since deceased opened an account in a savings bank in
    her own name in trust for a third person, when it can be gathered from
    all the circumstances that the depositor opened the account merely for
    convenience, without intending to transfer the beneficial interest in the
    fund in the person named as beneficiary, no trust is created.

2. SAME.
    A depositor had eight or ten accounts in a savings bank, largely in ex-
    cess in amount to what any one person could lawfully deposit on interest
    in one such bank, and though these accounts were nominally in trust
    the depositor had at all times treated them as her own.  *Held* insufficient
    to establish a trust in the beneficiaries named.

In the matter of the judicial settlement of William H. B. Totten,
administrator of Frances A. Lattan.   Motion to confirm report of
referee.   Granted.

James E. Carpenter, for administrator.
Richards & Heald, for Adelaide Van Hess, William S. Meeks, and
Harry Youle.
Reuben Leslie Maynard, for Emile R. Lattan .

CHURCH, S.   The question for consideration here is as to the
rights of one Emile R. Lattan to certain moneys which belonged to
the decedent, but which were deposited by her in a savings bank in
· her own name in trust for the said Emile R. Lattan.   The appellate
division of the Second department has held that an account opened in
substantially this manner "constitutes an unequivocal declaration of
trust in favor of the beneficiary."   In re Mueller, 15 App. Div. 67,
44 N. Y. Supp. 280;  Decker v. Savings Inst., 15 App. Div. 553, 44
N. Y. Supp. 521;  Williams v. Bank, 51 App. Div. 332, 64 N. Y. Supp.
1021;  Robertson v. McCarty, 54 App. Div. 103, 66 N. Y. Supp. 327.
    These decisions of the appellate division follow the earlier decisions
of the court of appeals in Martin v. Funk, 75 N. Y. 134, 31 Am. Rep.
446, and Willis v. Smyth, 91 N. Y. 297;  but the courts all agree that,
while the opening of an account in this manner constitutes a declara-
tion of trust, it is not absolutely controlling, but that the controlling
factor is the intent of the depositor, and if from all the surrounding
circumstances of the transaction, or in any other way, it can be gath-
ered that it was done by the depositor simply for the purpose of con-
venience, or any other reason, without any intention to transfer the
beneficial interest in the fund to the party named, then no trust will
be presumed.
    In determining the intention of the depositor, the court of appeals
seems to have been inclined to adopt a more liberal view of such trans-
actions than the appellate division, as evidenced by the following lan-

guage in Beaver v. Beaver, 117 N. Y. 421, 430, 22 N. E. 940, 942, 6 L. R. A. 403, 15 Am. St. Rep. 531:

"We cannot close our eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons with no intention of devesting themselves of ownership. It is attributable to various reasons; reasons connected with taxation; rules of the bank limiting the amount which any one individual may keep on deposit; the desire to obtain high rates of interest where there is a discrimination based on the amount of deposits; and the desire on the part of many persons to veil or conceal from others knowledge of their pecuniary condition. In most cases where a deposit of this character is made as a gift there are contemporaneous facts or subsequent declarations by which the intention can be established independently of the form of the deposit. We are inclined to think that to infer a gift from the form of the deposit alone would in a great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed and defeat the real purpose of the depositor."

It is true that in the Beaver Case the depositor deposited his money, not in trust, but actually in the name of another; but this fact does not seem to change the applicability of this language, because the gift might be made as well in the form of a trust as by a direct deposit; and that the court of appeals did not intend to limit this language in the Beaver Case to a direct deposit is shown by the language in Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412, 32 L. R. A. 373, 49 Am. St. Rep. 641, in which they expressly state that the principle of the Beaver Case was applicable to the cases where the question was simply one of trust. This language in the Beaver Case has recently been again quoted with approval by the court of appeals in the case of Washington v. Bank, 171 N. Y. 166, 63 N. E. 831, and the concluding paragraph is almost at direct variance with the rule of the appellate division, and certainly shows an intention upon the part of the court of appeals to allow very slight circumstances to rebut the presumption arising from the form of the account.

What was the intention of the depositor? Was there an intention to make a gift by the form of this deposit which should be irrevocable, or was it a case of a person who deposits his money to his own credit in trust for another as a method of transacting his business?

The referee has found "that the evidence does not authorize an affirmative finding that the deposits were made with the intent to give the money to the beneficiary or create a trust for him." A careful examination of the case satisfies me that such finding is correct, and that there was no intention on the part of the depositor to have this account operate as a gift to the beneficiary therein named. In most of the cases in which the question have arisen there have been involved but one or two isolated accounts, and it has been the effort of the court from some statement in connection with each account to endeavor to decide the intent of the depositor. It appears in this case that the deceased had considerable money of her own, and that, at the time of trouble which her brother Louis had with his wife, her brother turned over to her and her sister Angelica the sum of $20,000 for their management. The deceased was evidently favorably impressed with the idea of depositing her moneys, and also these moneys

which she had received from her brother, in savings institutions, as she opened more than 50 different accounts with savings banks. The sum of the deceased's holdings in the Irving Savings Institution, the bank in which the two accounts in question were opened, consisting of eight or ten accounts, was several fold the amount which by law of this state a savings bank is permitted to receive in one account and pay interest to a depositor, and these various accounts appear to have been opened in her individual name and others in trust in the names of various persons. She exercised complete control over these accounts, treating them as her own property, as in fact they were; and the two specific accounts in question were closed out by her some time before her death, and with the moneys new accounts in different names were opened. The court has held that the mere withdrawal of money on a single account which has been opened in this way does not show that it is not a trust account, but where we have, as in this case, the party owning money far beyond the amount which a bank could receive in her single name, and her treating these accounts as her own, drawing from them, depositing in them, and closing them, it seems to me the irresistible conclusion that, notwithstanding that they were opened in trust, we have, in the language of the Cunningham Case, "a person that takes his own money and deposits it to his own credit in trust for another, making no disclosure or publication of the trust, and treating it apparently as a mode of transacting his own business." If a contrary conclusion was reached, we would have a person who sought the greater security which she thought was afforded by savings banks, and compelled to open accounts in the only way she can do and comply with the law of the state relative to such institutions, instead of receiving the benefit which she anticipated she would have by dealing with such institutions, impoverished by a too strict construction of the form of the deposits. This is a case, therefore, which particularly calls for a recognition by the court of the practice of depositors in these institutions, and to ignore it would be to impute intentions never intended by the depositor. The referee's report is therefore confirmed.

Referee's report confirmed.