A husband transferred to his wife's name profits invested with his firm for several years, assigning as a reason for the transfer, in a letter to his son, that in case of any trouble with the firm he would have something for his wife and children which could not be touched by the creditors of the concern. On the death of his wife his children all signed an instrument permitting him to treat the money as his own, and a child thereafter required an accounting by the father of the money as of the property of her mother, and was paid a part of it by him. *Held*, that the property was subject to the transfer tax on the death of the mother.

In the matter of the transfer tax on the estate of Ellen G. Anthony, deceased.  From a decree assessing the same, certain of the next of kin appeal.  Dismissed.

Sullivan & Cromwell, for appellants.

Edward H. Fallows, for State Comptroller.

CHURCH, S.  This is an appeal from the decree assessing the interests of the next of kin under the transfer tax acts.

The facts under which the questions arise are not disputed by the parties, and are set up at great length in the papers.  Briefly, they are as follows:  Robert E. Anthony was the husband of the deceased.  He was a member of a firm in New York City.  Instead of withdrawing his partnership profits, he invested them with his firm, there being a special account of the same kept.  On December 31, 1877, he transferred this account to the name of his wife, and the account continued in this shape until after the death of his wife. After his wife's death it appears that his partners told him that he would have to be appointed his wife's administrator in order to collect this account, and to avoid the necessity of such proceedings a paper was executed by all of his children that he might treat the same as his own money.

The question that now arises is whether such money, which at the time of the death of the deceased amounted to the sum of $42,766.93, was the property of the deceased, and therefore subject to the payment of a transfer tax, or was it the property of Robert E. Anthony. The appraiser has declared that the same was the property of the deceased, and that, therefore, it was subject to the payment of the transfer tax.  Counsel for the appellants contend that this money should be treated as if it was a deposit in a savings bank, made by a person in trust for another, and that under the authority of Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412, 32 L. R. A. 373, 49 Am. St. Rep. 641, the trustee having survived the beneficiary named, he was entitled to withdraw this money, and that, therefore, it was not subject to the transfer tax.

But, even if this were to be treated exactly as a deposit in a savings bank, it has been held that the mere survivorship of the depositor does not authorize him to treat the money as his own. The controlling question is the intent with which the account was opened. If the account was opened with the intention of making a gift or transfer to the beneficiary, then, irrespective of whether the trustee does or does not survive the beneficiary, it is the beneficiary's property. If, on the other hand, it was opened merely for the convenience of the trustee, with no intent to transfer the legal title to the beneficiary, it would remain the property of the trustee. Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412, 32 L. R. A. 373, 49 Am. St. Rep. 641; Matter of Totten, 38 Misc. Rep. 349, 77 N. Y. Supp. 928.

What was the intent, therefore, of Robert E. Anthony in opening and continuing this account with the firm of which he was a partner in the name of his wife? It is to be noted that at the time that this account was opened there was severe business depression in this country. It seems as if his evident intention, by transferring the property then standing to his credit in this account to the name of his wife, and causing his surplus of profits each year to be deposited in her name, could only be for the purpose of placing her as a creditor of such firm, so that in the event of any failure of said firm she would be entitled to share with the other creditors, and thus receive something from the wreck, which could not be done if this account was continued in the name of Robert E. Anthony. Therefore, in addition to the presumption created by the opening of the account in this manner, we have this natural business reason, showing an intention to transfer it to the deceased. But, in addition, it appears that Robert E. Anthony wrote a letter to his son, in which he directly confirms the natural presumption from the opening of such above account, in which he stated that he had transferred such special account to the credit of the deceased, so that "in case of any trouble in the concern I would have something for your mother and the children which cannot be touched by the creditors of the concern." If this was his own money, and there was no intention to make it the property of his wife, then it could be touched by the creditors of the concern, and it could only be held securely by Mrs. Anthony from the creditors of the concern upon proof that it was a bona fide gift to her and was her property. It may be that shortly after this transfer, if there had been some collapse, a creditor might have attacked the same on the ground that it was transferred for the purpose of defrauding creditors; but that question cannot be discussed at the present time, as any such decision would have proceeded, not on the ground that there was not an intention of giving the title to Ellen G. Anthony, but on the ground that the reason for the transfer to Ellen G. Anthony by Robert E. Anthony was a fraudulent one.

Counsel for the appellants refers to the fact that in this letter Robert E. Anthony used the personal pronoun "I" in stating that he would have something for his wife and children. If it was stated

to be his own, then, of course, it could be attacked by creditors, and the entire purpose of it would be of no avail, and it could only be saved from the creditors if it was the property of Ellen G. Anthony.

In addition to this specific declaration of an intent to make this the property of the deceased, it appears that, some years after the children of Robert E. Anthony had signed this agreement permitting him to manage the matter, his son Robert E. Anthony, Jr., made a claim for an accounting of such property and for his share of the same. To this Robert E. Anthony, Sr., acceded, and subsequently gave to Robert E. Anthony, Jr., a large sum of money for his share and took a release therefor. This claim could only be made by Robert E. Anthony, Jr., upon the ground that this property was the property of his mother. If it was the property of his father, as is now contended by his sisters, then he certainly would have no right to demand his portion of the same, nor would his father be likely to grant it. It therefore seems to me that we must treat this property as having been given by Robert E. Anthony to his wife, and that, therefore, when she died she alone was the sole owner of the same, and hence that it was subject to the provisions of the transfer tax acts.

It is also contended by the comptroller that the appellants herein have, by certain acts and proceedings since the death of their mother, practically declared that this was her property, and hence that they are estopped from litigating the question of whether she is or is not the owner of the same; but, as I have reached the conclusion that she was the owner, it is unnecessary, of course, to consider this question. Let the decree assessing said tax be confirmed, and the appeal herein dismissed.

Decree confirmed, and appeal dismissed.